IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| ALONZO JOHNSON and JESSIE M. JOHNSON, | ) ) ) | |
| Plaintiffs, | ) ) | |
| V. | ) ) | CASE NO. _____ CV11____003____ |
| | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) | |

## **COMPLAINT**

COME NOW Alonzo Johnson and Jessie M. Johnson, as plaintiffs in the above-captioned action, and file this their action against the United States of America, as defendant, and respectfully show the Court the following in support thereof:

1.      Plaintiffs Alonzo Johnson ("Mr. Johnson") and Jessie M. Johnson ("Mrs. Johnson") are residents of the Southern District of Georgia and venue is proper in this Court pursuant to 28 U.S.C. §1402(b).

2.      This action arises from a tort committed at Dwight David Eisenhower Army Medical Center ("DDEAMC") Augusta, Georgia, against the person of the plaintiff Mr. Johnson.

3.      At the time of the incident herein alleged, Mr. Johnson was a retired and honorably discharged Master Sergeant from the United States Air Force.

4.     This action is based upon the Federal Tort Claims Act and this Court has jurisdiction of the subject matter and of the parties to this litigation pursuant to the Federal Tort Claims Act and 28 U.S.C. §1346(b).

5.     All of the acts of the defendant hereinafter set forth were committed by the agents, servants and/or employees of the Department of the Army of the United States of America who were acting at all times herein alleged in the scope of their employment at the DDEAMC at Augusta, Georgia.

6.     The defendant United States of America, through its agents, servants and employees, who were acting at all times within the scope of their employment, provided medical treatment to Mr. Johnson prior to and subsequent to January of 2007.

7.     In January of 2007, Mr. Johnson was a 52 year old male in good health who had undergone a screening colonoscopy in July of 2006 which revealed a questionable lesion in his colon that could not be definitively ruled noncancerous following a pathological evaluation.   Consequently, Mr. Johnson decided to undergo a colon resection for the purpose of having the possibly cancerous lesion removed.

8.     During the course of being evaluated and worked up for his colon resection Mr. Johnson underwent a CT scan which revealed an incidental 2.5 cm mass on his adrenal gland.  Mr. Johnson was completely asymptomatic as to the incidental mass seen on his adrenal gland but, given the fact that he was already planning to undergo colon surgery, decided, upon the advice of his surgeon, to have the adrenal mass removed at the time of his colon surgery.

9.     On January 9, 2007 Mr. Johnson presented at DDEAMC and was admitted to that facility for the purpose of undergoing a hand-assisted laparoscopic left adrenalectomy and low anterior bowel resection.

10.     The plan going into Mr. Johnson's surgery on January 9, 2007 was for Major Yong U. Choi to perform the hand-assisted laparoscopic left adrenalectomy and for Major Eric K. Johnson to perform the low anterior bowel resection.  Major Choi's portion of the procedure was to be performed first.

11.     During Major Choi's initial part of the laparoscopic procedure performed on Mr. Johnson he identified, cut away and removed from Mr. Johnson's body a portion of tissue that Major Choi believed to be the adrenal gland.

12.     When Major Choi removed the tissue from Mr. Johnson's body that Major Choi believed to be the adrenal gland he noted it "appeared to be larger than what an adrenal gland would be and it appeared to have gross findings suggestive of distal pancreas."

13.     The tissue that Major Choi believed to be the adrenal gland was then immediately sent to pathology who confirmed the tissue removed from Mr. Johnson's body was not, in fact, Mr. Johnson's adrenal gland but was, instead, his pancreas.

14.     After learning that he had mistakenly removed a portion of Mr. Johnson's pancreas, Major Choi converted the procedure from a laparoscopic procedure to an open procedure so that he could oversew the distal portion of the pancreatic edge to prevent pancreatic leak.

15.     Major Choi did not intend to remove any portion of Mr. Johnson's pancreas at the outset of the procedure.

16.     Mr. Johnson never consented to have any portion of his pancreas removed prior to the procedure.

17.     Prior to January 9, 2007 Mr. Johnson's pancreas was not diseased and no doctor or surgeon had ever suggested to him that any portion of his pancreas should be removed surgically.

18.     Following Mr. Johnson's surgery, both Major Choi and Major Johnson met with Mrs. Johnson who had been waiting to receive news concerning the outcome of her husband's surgery and explained to her that Major Choi had mistakenly removed part of Mr. Johnson's pancreas.

19.     Approximately 40% of Mr. Johnson's pancreas was wrongfully and mistakenly removed by Major Choi on January 9, 2007.

20.     Mr. Johnson remained hospitalized following the wrongful removal of a portion of his pancreas through February 3, 2007 and, during the remainder of his hospitalization at DDEAMC, encountered multiple complications proximately caused or contributed to by the mistaken removal of a significant portion of his pancreas.

21.     During the course of Mr. Johnson's hospitalization following the wrongful removal of a portion of his pancreas, Mr. Johnson had to be taken back to surgery on January 19, 2007 for the purpose of having a pelvic abscess evaluated and drained that had formed at the site of the anastomosis which is where where the healthy ends of his colon had been put back together by Major Johnson after the resection of the possibly cancerous portion of Mr. Johnson's colon during the initial surgery on January 9th.

22.     The breakdown of this anastomosis was proximately caused or contributed to by the wrongful removal of a portion of Mr. Johnson's pancreas which led to the leaking of pancreatic fluid into his abdomen thereby damaging the anastomosis and, had a portion of Mr. Johnson's pancreas not been wrongfully removed, his anastomosis

4

would not have failed and broken down leading to the development of a pelvic abscess and the subsequent surgery of January 19, 2007.

23.     During Mr. Johnson's hospitalization at DDEAMC after the wrongful removal of a portion of his pancreas on January 9th, Mr. Johnson experienced continuous pancreatic leaks to the extent that he had to be transported to the Medical College of Georgia on January 31, 2007 for the purpose of having a pancreatic stent placed.  This procedure would not have been necessary if a portion of Mr. Johnson's pancreas had not been damaged and removed by Dr. Choi.

24.     During Mr. Johnson's hospitalization at DDEAMC following the wrongful removal of a significant portion of his pancreas on January 9, 2007 and prior to his discharge on February 3, 2007, Mr. Johnson began to experience significantly elevated glucose levels and, for the first time in his life, began to be administered insulin for the purpose of controlling his elevated glucose levels.

25.     The healthcare providers employed or utilized by defendant including, but not limited to, Major Choi had a duty to Mr. and Mrs. Johnson to exercise that degree of skill and care employed by healthcare providers generally under similar conditions and like surrounding circumstances.  Defendant's healthcare providers deviated from that degree of skill and care employed by such healthcare providers generally under similar conditions and like surrounding circumstances in their medical care provided to Mr. Johnson.

26.     The healthcare providers employed or utilized by defendant carelessly and negligently, and in deviation from the standard of care, failed to adequately identify and isolate Mr. Johnson's pancreas during the course of his surgery on January 9, 2007 and further failed to distinguish his pancreas from the subject of his surgery which was, in

5

fact, his adrenal gland.  The negligent failure to adequate identify, isolate or distinguish Mr. Johnson's pancreas from his adrenal gland led to the wrongful and inadvertent removal of a significant portion of Mr. Johnson's distal pancreas.

27.     As a direct and proximate result of the negligence of the agents, servants and employees of defendant, Mr. Johnson has suffered serious and significant injury, harm and damage which has continued, unabated up through the filing of this complaint, and which includes, but is not limited to, Mr. Johnson's status as an insulin dependent diabetic.

28.     As a direct and proximate result of the negligence of the defendant and its agents, servants and employees, Mr. Johnson has suffered great physical and mental pain and suffering and has suffered other injuries and damages in the past and will continue to suffer injuries and damages caused by the defendant's negligence through the remainder of his life.

29.     Mr. Johnson is entitled to bring this action to recover all damages allowed by law.

30.     As a direct and proximate result of the negligence of the defendant and its agents, servants and employees, Mr. Johnson has been physically unable to perform his domestic and conjugal duties because of his injuries hereinabove described, thus depriving Mrs. Johnson of his services and the right of consortium, for which deprivation and injury Mrs. Johnson is entitled to recover.

31.     Pursuant to the laws of the United States of America, Mr. and Mrs. Johnson have previously filed administrative claims with the Department of the Army for compensation for their injuries and damages sustained as a result of the above negligence on the part of the defendant through its agents, servants and employees.

32.     The aforesaid administrative claims have been pending for over six (6) months; the defendant has failed to make a final disposition of said claims; said claims of Mr. Johnson for his injuries and of Mrs. Johnson for her loss of consortium are thereby deemed finally denied pursuant to 28 U.S.C. §2675(a); and this action is, therefore, timely.

33.     The affidavit of Robert G. Martindale, M.D., PhD is attached hereto and marked as Exhibit "A".

34.     As a direct and proximate result of the negligence of defendant United States of America, Mr. Johnson has been damaged.

35.     As a direct and proximate result of the negligence of defendant United States of America, Mrs. Johnson has been damaged for loss of consortium.  In the event of Mr. Johnson's death from the injuries sustained as a result of the negligent surgery on January 9, 2007, Mrs. Johnson reserves the right to file a wrongful death claim.

WHEREFORE, Mr. Johnson demands judgment in excess of Ten Thousand and No/100 ($10,000) Dollars against defendant United States of America together with costs of this action; and Mrs. Johnson demands judgment in excess of Ten Thousand and No/100 ($10,000) Dollars against said defendant together with costs of this action.

This _____ day of January, 2012.

/S/THOMAS W. TUCKER
STATE BAR NO. 717975
TUCKER, EVERITT, LONG,
BREWTON & LANIER
P. O. BOX 2426
AUGUSTA, GEORGIA 30903
Telephone: (706) 722-0771
Facsimile: (706) 722-7028
ttucker@thefirm453.com

/s/BENJAMIN H. BREWTON
STATE BAR NO. 002530
TUCKER, EVERITT, LONG,
BREWTON & LANIER
P. O. BOX 2426
AUGUSTA, GEORGIA 30903
Telephone: (706) 722-0771
Facsimile: (706) 722-7028
bbrewton@thefirm453.com

ATTORNEYS FOR PLAINTIFFS

COUNTY OF MULTNOMAH )

STATE OF OREGON            )

<u>**AFFIDAVIT OF ROBERT G. MARTINDALE, M.D., Ph.D.**</u>

PERSONALLY APPEARED before the undersigned officer duly authorized to administer oaths, ROBERT G. MARTINDALE, M.D., Ph.D., who having been first duly sworn, states as follows:

1.      I am a practicing physician specializing in the area of surgery related to the abdomen and gastrointestinal tract.

2.      I am licensed to practice medicine in Oregon and was licensed by the appropriate State regulatory agencies in both those states to practice medicine in January of 2007 at the time Mr. Johnson underwent his surgery at Eisenhower Army Medical Center at Fort Gordon, Georgia.

3.      I am board certified in surgery having been originally certified in 1990 and recertified in 2000 and 2010.

4.      I am currently a professor of surgery and Chief of the Division of General Surgery at Oregon Health and Science University located in Portland, Oregon where I have been continuously since 2005.



EXHIBIT

"A"

5.      Immediately prior to my professorship at Oregon Health and Science University, I was the chief of gastrointestinal surgery at the Medical College of Georgia in Augusta, Georgia from 2001 through 2005.

6.      I have been continuously and regularly engaged in the practice of general surgery since 1989 including, but not limited to, service as an active duty Army surgeon  at Eisenhower Army Medical Center at Fort Gordon, Georgia where I served as the Director of Surgical Critical Care from 1991 through 1993 and the Director of Surgical Research from 1989 through 1993.

7.      A copy of my curriculum vitae is attached hereto and marked as Exhibit "A".

8.      In the formulation of my opinions in this matter, I have relied on my knowledge, training and experience as well as my review of the following:

a)      Medical records maintained on Alonzo Johnson by Eisenhower Army Medical Center which records include, but are not limited to, those records associated with Mr. Johnson's admission to Eisenhower Hospital on January 9, 2007 for purposes of undergoing a laparoscopic left adrenalectomy and low anterior bowel resection.

b)      Medical records maintained on Alonzo Johnson by the Medical College of Georgia.

c)      Medical records maintained on Alonzo Johnson by University Medical Associates in Augusta, Georgia.

9.     In the course of my surgical career I have performed, overseen and directed both laparoscopic adrenalectomies and bowel resections.  These procedures are part of an abdominal focused general surgery practice which I have been regularly engaged in for at least the last five years and which I was engaged in actively and continuously for the five years preceding January, 2007 which is when Mr. Johnson underwent his adrenalectomy and bowel resection at Eisenhower Army Medical Center.

10.     I am knowledgeable about and familiar with the standards of care to be utilized by a general surgeon who undertakes to perform a laparoscopic adrenalectomy.     11.     It is my professional medical opinion that Dr. Yong Choi deviated from the standards of care exercised by the medical profession generally under like or similar circumstances in regard to the laparoscopic left adrenalectomy performed on Alonzo Johnson on January 9, 2007.  Specifically, it is my professional medical opinion that Dr. Choi's failure to appropriately and accurately identify the adrenal gland prior to the planned dissection of same caused him to mistakenly and inadvertently transect and remove approximately 40 percent of Mr. Johnson's pancreas rather than his adrenal gland when, in fact, the pancreas was not the subject of the surgery and was not intended to be operated on in any fashion.

12.     It is my opinion stated to a reasonable degree of medical probability that the drainage from the transected pancreas was a contributing factor to the subsequent breakdown and leaking of Mr. Johnson's anastomosis.

13.     It is further my opinion stated to a reasonable degree of medical probability that Mr. Johnson's current status as an insulin dependent type 2 diabetic is probably the result of the accidental and inadvertent removal of 40 percent of his pancreas on January 9, 2007 by Dr. Choi.

14.     This affidavit does not contain all of my criticisms related to the failures and deviations of Dr. Yong Choi and/or Dr. Eric Johnson but, instead, is intended to comply with any requirements of state and federal law relating to affidavits of experts. This affidavit is neither a summary of all opinions that I may hold in this matter nor a listing of every material departure from the standard of care. I specifically reserve the right to add to, amend or subtract from this affidavit as new evidence comes into discovery or as new opinions are formulated.

15.     I understand that this affidavit will be used in conjunction with the filing of a civil action against the United States of America.

Sworn to and subscribed before

me this ___6___ day of _January_, 2012.

_____          _____
Notary Public,                            ROBERT G. MARTINDALE, M.D., Ph.D.

OFFICIAL SEAL
KAREN RENEE MILLER
NOTARY PUBLIC-OREGON
COMMISSION NO. 445718
MY COMMISSION EXPIRES JANUARY 30, 2014

State of Oregon
County of Multnomah
Comm. exp 1/30/2014

## CURRICULUM VITAE

### December 4, 2006

| | |
|---|---|
| **NAME:** | **Robert G. Martindale, M.D., Ph.D.** |
| **MCG TITLE:** | Professor of Surgery<br>Oregon Health & Science University |
| **OFFICE ADDRESS:** | Oregon Health & Science University<br>3181 SW Sam Jackson Park Rd., L223A<br>Portland, Oregon 97239 |
| **OFFICE TELEPHONE:** | (503) 494-9145  FAX:  (503) 494-8884 |
| **EDUCATION:** | Humboldt State University<br>Arcata, California, 1973 - 1977, B.A./M.A.<br><br>University of California<br>Los Angeles, California, 1977 - 1982, Ph.D.<br><br>George Washington University<br>Washington, DC, 1980 - 1984, M.D.<br><br>Surgical Residency<br>Madigan Army Medical Center<br>Tacoma, Washington, 1984-1989 |
| **CERTIFICATE AND CREDENTIALS:** | American Board of Surgery 1990<br>Recertification 2000<br><br>National Boards 1985 |
| **LICENSURE:** | Georgia<br>Oregon |
| **MILITARY:** | 1984 – 1993 United States Army |
| **PROFESSIONAL APPOINTMENTS:** | Medical Director for Hospital Nutrition Services<br>Oregon Health & Science University<br>2005 - Present<br><br>Chief, Section of Gastrointestinal Surgery<br>Medical College of Georgia<br>2001 - 2005<br><br>Director Nutrition Support Service<br>Medical College of Georgia<br>1993 - 2005<br><br>Chief, General Surgery Service<br>Department of Veterans Affairs<br>Medical Center Augusta, Georgia 30904-6285 |

1993 - 2002

Vice Director, General Surgery Residency Program
Medical College of Georgia
Augusta, Georgia 30912
1997-2001

Director, Surgical Critical Care
Eisenhower Army Medical Center
Fort Gordon, Georgia 30905
1991 – 1993

Director, Surgical Research
Eisenhower Army Medical Center
Fort Gordon, Georgia 30905
1989 - 1993

Clinical Instructor in Human Nutrition
Washington State University
Pullman, Washington 1986 – 1989

Director, Nutrition Support Service
Madigan Army Medical Center
Tacoma, Washington 98431
1984 - 1989

Academic Appointment:          Professor
                               Department of Surgery
                               Oregon Health & Science University
                               2005 - Present

                               Professor
                               Department of Surgery
                               Medical College of Georgia
                               2004 - 2005

                               Associate Professor
                               Department of Surgery
                               Medical College of Georgia
                               1997-2004

                               Assistant Professor
                               Department of Surgery
                               Medical College of Georgia
                               1993-1997

**SOCIETY
MEMBERSHIPS:**                 Fellow, American College of Surgeons

                               Society for Surgery of the Alimentary Tract

                               American Society for Parenteral and Enteral Nutrition

                               Association Program Directors in Surgery

                               Oregon Chapter, Society of Critical Care Medicine
                               Board Member

Southeastern Surgical Association

Surgical Infection Society

Society of Critical Care Medicine

Association of Veterans Administration
Surgeons

Georgia Surgical Society (until 2006)

William H. Moretz Surgical Society (until 2005)

North Pacific Surgical Association

**AWARDS/HONORS:**  National Institute of Health
Nutrition Traineeship, 1978 - 1980

Elected Class President of First
Year Medical School Class,
Re-elected Second Year, 1980 - 1982

Received Donald F. Glew Memorial
Award for Excellence in Research
as a Medical Student, 1981

Elected by Housestaff as "Outstanding
Teaching Resident", 1986

Selected for Major General F.
Wergland Award as "The Outstanding
Graduating Resident", 1989

"Teacher of the Year" Award -
Augusta Dietetic Internship Program, 1991, 1998

"Faculty Teacher of the Year" Award -
Medical College of Georgia General Surgery, 1995 & 1996

"Faculty Golden Apple" Award
Medical College of Georgia 1997
Surgery Department

NBI Healthcare Foundation Award
For Humanism in Medicine, 1998

Alpha Omega Alpha Honor Medical Society, 2002

'Golden Apple Award'
Medical College of Georgia 2002, 2005

**ADMINISTRATIVE RESPONSIBILITIES:**

Editorial Boards:                 Section Editor, Nutrition
                                  American Surgeon
                                  Digestive Diseases and Sciences
                                  Journal Parenteral and Enteral Nutrition
                                  Nutrition in Clinical Practice

Committees:

Hospital:                         Faculty Senate Member
                                  Infection Control Committee
                                       Antibiotic Subcommittee of
                                  Biochemistry Department Planning Committee
                                  Graduate Medical Education Committee
                                  Promotion and Tenure Committee
                                  ENT Search Committee
                                  Operating Room Planning Operations Committee

National:                         American College of Surgeons, Committee on Allied Health
                                  Personnel
                                  Member, Board of Directors for National Commission for Certification of
                                  Physician Assistant (NCCPA)
                                          Sub-Committees of NCCPA
                                          Bylaws Committee (NCCPA)
                                          Test Development Committee (NCCPA)
                                          Technology Task Force Committee (NCCPA)
                                  Education Program Chairman, Georgia Chapter American College of
                                  Surgeons
                                  Society Critical Care Medicine
                                          Chairman: Committee to Develop Critical Care Nutrition
                                          Guidelines
                                  American Society Parenteral and Enteral Nutrition
                                          Publications Committee